**In re SPIRIT HOLDING COMPANY, INC., et al., Debtors.**

**Central Hardware Co., Inc., and Witte Hardware Corp., Movants.**

**Bankruptcy No. 93–42135–293.
Motion No. 123.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Sept. 1, 1993.

Fruman Jacobson, John Collen, Robert J. Labate, Sonnenschein Nath & Rosenthal, Chicago, IL, Francis M. Gaffney, Carl B. Hillemann, Sonnenschein Nath & Rosenthal, David A. Sosne, St. Louis, MO, for debtors.

Pepper, Hamilton & Scheetz, Detroit, MI, Milton P. Goldfarb, Newman, Goldfarb, Freyman & Stevens, P.C., Clayton, MO, for Unsecured Creditors' Committee.

Michael Richman, Mayer, Brown & Platt, New York City, David A. Warfield, Husch & Eppenberger, St. Louis, MO, for Bank Group.

1. The Bank Group is comprised of Generale Bank, New York Branch, as agent, Allied Irish Bank, ABN–AMRO Bank, Banque Nationale de Paris, Banque Paribas, Eaton Vance Prime Rate Reserves, Banque Worms, Societe Generale, Commercial Bank of Kuwait and Banque Internationale a Luxembourg. The Bank Group holds claims against the Debtors in an amount approximating $150 million in senior secured indebtedness.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A) and (E), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

(1) The Debtors, Central Hardware Company (Central) and Witte Hardware Corporation (Witte), as debtors and debtors in possession (collectively, Debtors) filed petitions under Chapter 11 of the Bankruptcy Code on March 23, 1993. The Debtors filed their petitions with the Bankruptcy Court for the District of Delaware.

(2) The Bank Group [1] filed a Motion For Transfer of Venue which the Bankruptcy Court for the District of Delaware granted on April 16, 1993. Pursuant to the Delaware court's Order, the case was transferred to the Eastern District of Missouri.

(3) The Debtors filed a Motion For Authority To Pay Certain Pre–Petition Sales Taxes Having Priority totalling approximately $862,000 which the Court designated as Motion 123. The Debtors, through motion 123, sought authority to pay sales taxes owed to six states [2] that they had collected prepetition but not surrendered to those states by the date they filed their bankruptcy petitions.

The Debtors offered two reasons to support their request. First, the Debtors argued that payment of these obligations was in their best interest because, under the laws of the state to whom the Debtors owed sales taxes their employees could be held personal-

2. The Debtors alleged that they collected sales taxes in the following amounts for the following states: Indiana ($130,096.88); Kentucky ($16,724.62); Mississippi ($1,146.26); Missouri ($68,959.89); Tennessee ($336,583.00); Ohio ($380,467.49).

ly liable for payment of the taxes if the Debtors did not pay them. The Debtors insisted that such liability would impose undue hardship upon its employees and that the threat of such liability distracted those potentially liable employees from effectively performing their duties. The Debtors maintained that the Court through its equitable powers and the doctrine of necessity has the ability to grant the relief they seek.

Second, the Debtors indicated that at least one state had taken the position that the sales taxes the Debtors collected were held in trust for the state and were not property of the estate. The Debtors claimed that it would be less costly to pay the taxes owed to the states than to defend adversary proceedings that the states might file asserting that the sales taxes were funds held in trust for them.

(4) The Bank Group filed an objection to Motion 123. The Bank Group took the position that the Doctrine of Necessity does not apply to the Debtors' case. The Bank Group argued that that doctrine only applies when a debtor's post-petition survival is threatened and that any suits by the six states to whom the Debtors owed sales taxes will not endanger the Debtors' reorganization. The Bank Group further argued that the Debtors could pay the taxes over a six year period under a plan of reorganization and that, because of the time value of money, an earlier payout was not in the Debtors' best interest. Finally, the Bank Group maintained that the states alleging that the sales taxes owed to them constitute trust funds should have to prove that before the Court.

(5) The Court held a hearing on Motion 123 where it orally ruled that the Doctrine of Necessity did not apply to the Debtors' situation and that it would not grant Motion 123 on the basis of that doctrine. However, the Court indicated that it would consider granting the Debtors authority to pay the sales taxes if they could demonstrate that they held those funds in trust for the states. The Debtors conceded that of the six states it initially sought to pay, only four had statutes which could be read to establish a trust

between the Debtors and the state for whom the Debtors collected the sales taxes.[3]

(6) At the Court's direction, the parties briefed the issue of whether the Debtors held the sales taxes they collected in Indiana, Kentucky, Mississippi and Ohio in trust for the taxing authorities in those states.

## FACTUAL BACKGROUND

The facts of this case are not disputed. After considering the record, the Court finds:

(1) The Debtors sell hardware and other merchandise on both the retail and wholesale levels. As part of their operating routine, the Debtors collect sales taxes for those states in which they sell products.

(2) In March of 1993, the Debtors collected sales taxes on those sales they made in Indiana, Kentucky, Mississippi and Ohio in an aggregate amount of $456,435.25. The Debtors did not place the funds representing these sales taxes into an escrow or other separate account, but commingled them with their other operating funds. The Debtors have yet to pay to the Indiana, Kentucky, Mississippi and Ohio taxing authorities, the sales taxes they owe those states from transactions that occurred in March of 1993.

(3) Had they not filed petitions in bankruptcy and had they followed their normal business routine, the Debtors, in April of 1993, would have paid the states for whom they had collected sales taxes in March 1993 an amount equal to those sums collected.

## DISCUSSION

■ The parties agree that ruling on Motion 123 will require the Court to apply *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). The *Begier* case involved an airline which, within ninety days of filing bankruptcy, used its general operating funds to pay sales taxes and excise taxes which it owed to the Internal Revenue Service. 496 U.S. at 54–55, 110 S.Ct. at 2261. The trustee appointed to the airline's Chapter 7 case, which followed the debtor's unsuccessful attempt to reorganize under Chapter 11, petitioned the court to avoid and recover the sale tax and excise tax

---

**3.** The Debtors admit that the statutes in Missouri and Tennessee do not create a trust relationship

between those states and a party that collects the sales taxes for those states.

payments that the airline had made during the ninety days immediately preceding the filing of its bankruptcy petition. *Id.* at 56–57, 110 S.Ct. at 2262. The Supreme Court held that the airline's payments to the Government "from its general accounts were not transfers of 'property of the debtor,' but were instead transfers of the property held in trust for the Government pursuant to § 7501." *Id.* at 67, 110 S.Ct. at 2267.

Justice Marshall, writing for the *Begier* majority, began his opinion with an examination of section 547 of the Bankruptcy Code, and a discussion of the meaning of the phrase "property of the debtor" in that section. 496 U.S. at 59, 110 S.Ct. at 2263. Then, Justice Marshall examined 26 U.S.C. § 7501 which creates a trust of the amount of an Internal Revenue Service tax that a person collects or withholds. *Id.* Title 26, section 7501 provides: "Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States." Focusing on the language of the statute, the Court determined that when a person collected a tax for the Internal Revenue Service a trust arose over the amount of tax withheld or collected. *Id.* at 60–61, 110 S.Ct. at 2264. Justice Marshall emphasized that, because Congress was not bound by the common law of trust, no res had to be identified for the trust created under 26 U.S.C. § 7501 to arise, instead, the trust applied to an amount of money "not tied to any assets." *Id.* at 62–64, 110 S.Ct. at 2265. Again, looking to the statute, the majority maintained that the trust created by section 7501 arises, in the case of taxes a person collects for the United States, when the person collects those taxes; in other words, when the third party pays the taxes over to the person collecting them for the Government, regardless of whether the collector segregates the funds from its other assets. *Id.* at 60–61, 110 S.Ct. at 2264.

Having concluded that the trust created by 26 U.S.C. § 7501 arises when a person collects taxes for the Government and that the trust so established applies to an abstract amount, the Court narrowed the issue presented by *Begier.* 496 U.S. at 60–61, 110 S.Ct. at 2264. The high court stated that while section 7501 establishes a trust for the IRS, "that section provides no rule by which we can decide whether the assets [the debtor] used to pay the IRS were assets belonging to that trust" and that "[o]nly if those particular funds [used to pay the taxes during the preference period] were held in trust for the IRS do they escape characterization as 'property of the debtor.'" *Id.*

Justice Marshall noted that tracing rules useful in following the res of a common law trust are "unhelpful" in the context of a trust created under section 7501 because such a trust is so "radically different" from a common law trust. *Id.* at 62, 110 S.Ct. at 2265. In drawing this conclusion, the Court relied upon the legislative history of 11 U.S.C. § 541, specifically, the comments of representative Edwards. *Id.* at 64–66, 110 S.Ct. at 2266. Representative Edwards, in considering situations where collected taxes remain in the debtor's possession at the commencement of a bankruptcy, suggested that "courts should permit the use of reasonable assumptions under which the Internal Revenue Service, and other tax authorities, can demonstrate that the amounts of withheld taxes are still in the possession of the debtor." *Id.* (citation omitted). The Supreme Court understood Representative Edwards's comments to indicate that "Congress expected that the IRS [or other taxing authority] would have to show *some* connection between the § 7501 trust and the assets sought to be applied to a debtor's trust fund tax obligations." 496 U.S. at 65–66, 110 S.Ct. at 2266 (citations omitted).

Justice Marshall, without delineating what, at a minimum, would satisfy the nexus requirement, concluded that that requirement was met in *Begier* because the debtor had, before filing its bankruptcy petition, voluntarily paid the trust fund taxes out of its own assets. *Id.* at 66–68, 110 S.Ct. at 2267. From this conduct, the Court could conclude that the necessary nexus between the funds collected and those paid to the IRS existed so that the funds paid to the IRS from the debtor's general accounts, were subject to

section 7501's trust and, therefore, not property of the debtor. *Id.*

Here, neither Central nor Witte acted pre-petition to pay the sales taxes they collected during March of 1993 to the taxing authorities to whom they were owed. Nor did either debtor place the taxes collected into a segregated account, or do anything else indicative of the existence of a nexus between the funds they now seek to surrender to Indiana, Kentucky, Mississippi, and Ohio and the funds collected in March, now alleged to be held in trust. Under *Begier,* a debtor defending a preference action or seeking to pay trust fund taxes post-petition, must show the existence of a nexus between the funds surrendered or to be surrendered in satisfaction of the trust fund tax obligation and the amounts collected and held in trust. Neither Central nor Witte has proven the existence of such a nexus.

In holding that the Debtors have not demonstrated a nexus between the funds they seek to apply to their trust fund tax obligations and the sums held in trust under the state laws allegedly creating trusts of the sales taxes the Debtors collected during March of 1993, the Court recognizes that the various state taxing authorities to whom the Debtors owe the sales taxes collected in March 1993 were not parties to this adversary proceeding. This opinion does not bind those parties or limit their rights.

An Order consistent with this Memorandum Opinion will be entered this date.

### ORDER

For the reasons set forth in the Memorandum Opinion filed this date, IT IS

ORDERED that Debtors' Motion For Authority To Pay Certain Pre–Petition Sales Taxes Having Priority, designated Motion 123 by the Court, IS DENIED.